```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

NATHAN WARD,

           Petitioner,         Case No. 13 C 9025

      v.                 Judge Harry D. Leinenweber

UNITED STATES OF AMERICA,

           Respondent.

## MEMORANDUM OPINION AND ORDER

For the reasons stated herein, Petitioner Nathan Ward's ("Ward") Motion to Vacate, Set Aside, or Correct Sentence [ECF No. 1] is denied.

### I. BACKGROUND

On September 8, 2009, Ward was charged in an indictment with four offenses: (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine (Count One), (2) attempted possession with intent to distribute five kilograms or more of cocaine (Count Two), (3) possession of a firearm in furtherance of a drug offense (Count Three), and (4) possession of a firearm after having been convicted of a felony (Count Six). (No. 9 CR 687, ECF No. 18.) The facts of this case are summarized in *United States v. Mayfield,* 771 F.3d 417 (7th Cir. 2014), and briefly restated here.

This case arises from a Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") sting operation in which Ward and his co-conspirators — Leslie Mayfield, Montreece Kindle, and Dwayne White — planned and ultimately convened to carry out what they believed to be a stash house robbery. Mayfield, who had been recruited by a confidential informant ("CI"), Jeffrey Potts, was to assemble a crew, gather weapons, and help a disgruntled drug courier carry out the robbery. The drug courier was actually an undercover special agent, Dave Gomez.

According to the evidence presented at trial, on August 9, 2009, Mayfield, Ward, Kindle, and an individual known as "New York" met with Gomez to discuss the robbery. Ward actively participated in the conversation. For instance, he asked Gomez for a guarantee as to how many individuals would be in the stash house to ensure there were "no surprises" and suggested that Gomez send some type of signal from inside the stash house. Ward also suggested splitting the stolen cocaine five ways. Ward indicated, along with his fellow co-defendants, that the proposed robbery was not too much for him to handle. The robbery was scheduled for the following day.

On August 10, 2009, Mayfield, Ward, Kindle, and White met with Gomez, who led them to a storage facility. Ward indicated that he had not come "all the way from Milwaukee for nothing" and was ready to proceed with the robbery. After confirming that all

the men were "good" for the robbery, Gomez gave the arrest signal, and Ward and the rest of his crew were taken into custody. The van in which Ward, Kindle, and White traveled to the storage facility contained weapons, ski masks, bullet-proof vests, latex gloves, and a large duffle bag.

Before trial, the Government presented a Motion *in limine* to preclude Defendants from presenting an entrapment defense. Only Mayfield filed a response, accompanied by a six-page, handwritten "statement of fact." (No. 9 CR 687, ECF No. 69.) The Court granted the Government's Motion over Mayfield's objection, (No. 9 CR 687, ECF No. 95), and subsequently denied Mayfield's Motion for Reconsideration.

After a one-week trial, a jury found Ward guilty on all four counts of the indictment. (No. 9 CR 687, ECF No. 186.) Ward and his co-defendants all appealed their convictions, challenging the sufficiency of the evidence presented against them. *See, United States v. Kindle*, 698 F.3d 401, 405–08 (2012), *vacated in part on reh'g en banc sub nom.*, *Mayfield*, 771 F.3d 417. Mayfield also appealed the Court's decision to grant the Government's Motion *in limine* precluding his entrapment defense. *Id.* at 408–09. The Seventh Circuit affirmed the convictions. *Id.* at 412.

Mayfield subsequently petitioned for rehearing *en banc* solely on the issue of the entrapment defense. Upon rehearing, the Seventh Circuit vacated its decision on Mayfield's entrapment

defense, holding that Mayfield's pre-trial proffer was sufficient to overcome the Government's Motion *in limine*. *Mayfield,* 771 F.3d at 443. The Seventh Circuit indicated that it was reinstating the panel opinion to the extent that it resolved the appeals of Mayfield's co-defendants. *Id.* at 424 n.3.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the basis that the sentence was imposed in violation of the Constitution or laws of the United States. To receive relief under § 2255, a prisoner must show a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979) (citation and internal quotations omitted). Alternatively, relief may be granted if a prisoner can show the trial court made "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States,* 368 U.S. 424, 428 (1962). Relief under § 2255 is an "extraordinary remedy" because the petitioner "already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007).

## III. ANALYSIS

Ward claims that he is entitled to relief under § 2255 for four reasons: (1) he received ineffective assistance of counsel, (2) the evidence was insufficient to sustain his conspiracy

- 4 -

conviction, (3) he was charged with a nonexistent offense, and (4) the Court lacked both subject matter and personal jurisdiction.

### A. Ineffective Assistance of Counsel

Ward asserts three bases for his ineffective assistance of counsel claim. First, Ward argues that "neither trial nor appellate counsel[] challenged that Ward can only be innocent of a nonexistent offense," (Ward Mem., ECF No. 3, at 3). Second, Ward argues that counsel was ineffective in failing to present an entrapment defense. Third, in a supplemental memorandum, (ECF No. 12), Ward argues that his counsel was ineffective in failing to argue that ATF sting operations are unconstitutional and driven by racial profiling.

Ward's ineffective assistance of counsel claim also contains arguments that the Court abused its discretion in allowing the prosecution to "proceed upon a non-existent offense," (*id.* at 9.), and that the Government's Motion *in limine* to preclude an entrapment defense amounted to prosecutorial misconduct, (*id.* at 4-9). Because these arguments were not asserted in Ward's direct appeal, and he has not shown "cause" excusing his default, or "actual prejudice" resulting from the claimed errors, *see, United States v. Frady,* 456 U.S. 152, 167–68 (1982), Ward is procedurally barred from raising these arguments now, *see, Wright v. United States,* 139 F.3d 551, 553 (7th Cir. 1998). Accordingly, the Court

considers these additional arguments only to the extent they relate to his ineffective assistance of counsel claim.

To prevail on a claim for ineffective assistance of counsel, a petitioner must show that: "(1) counsel's performance was deficient, meaning it fell below an 'objective standard of reasonableness' informed by 'prevailing professional norms' and (2) counsel's deficient performance prejudiced the petitioner, meaning that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Smith v. Brown,* 764 F.3d 790, 795 (7th Cir. 2014) (quoting *Strickland v. Washington,* 466 U.S. 668, 687–88 (1984)). The Court's review of an attorney's performance is highly deferential, and a defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Koons v. United States,* 639 F.3d 348, 351 (7th Cir. 2011) (citation and internal quotations omitted).

Ward first argues that his counsel was ineffective in failing to present a defense premised on the fact that "no real offense actually occurred." (Ward Mem., ECF No. 3, at 3.) However, none of the charges against Ward require the existence of an actual stash house stocked with actual drugs. As to the conspiracy charge, the fictitious nature of a proposed crime is no defense: "Though it might seem odd, the fact that the stash house, the

drugs — indeed the whole plot — was fake is irrelevant. That the crime agreed upon was in fact impossible to commit is no defense to the crime of conspiracy." *United States v. Corson,* 579 F.3d 804, 810 (7th Cir. 2009). The same is true of attempted possession, an inchoate crime that does not require completion of the act of possession. *See, United States v. Weaver,* 8 F.3d 1240, 1243-44 (7th Cir. 1993) (citations omitted). The intent to obtain illicit drugs — a key element of the crime — "may exist even where there are no drugs to be had." *Id.* at 1244. Likewise, the existence of an actual stash house has no impact on Counts III or IV — use of a firearm in furtherance of a drug trafficking crime, or possession of a firearm by a convicted felon. The Court therefore concludes that counsel's decision not to present an "actual innocence" defense on the basis Ward asserts was sound trial strategy. Because Ward's argument would not have provided a defense against any of the charges against him, counsel's decision not to pursue it caused no prejudice. The Court therefore rejects this basis for Ward's ineffective assistance of counsel claim.

Ward next argues that counsel was ineffective in failing to pursue an entrapment defense. "To raise an entrapment defense, a defendant must show: (1) that he was induced by a government actor to commit the crime at issue; and (2) that he was not predisposed to commit that crime." *United States v. Hall,* 608 F.3d 340, 343 (7th Cir. 2010). The Seventh Circuit recently

clarified that "inducement means government solicitation of the crime *plus* some other government conduct that creates a risk that a person who would not commit the crime if left to his own devices will do so in response to the government's efforts." *Mayfield,* 771 F.3d at 434–35. In determining predisposition, the Court considers the following five factors:

> (1) the defendant's character or reputation; (2) whether the government initially suggested the criminal activity; (3) whether the defendant engaged in the criminal activity for profit; (4) whether the defendant evidenced a reluctance to commit the offense that was overcome by government persuasion; and (5) the nature of the inducement or persuasion by the government.

*United States v. Blassingame,* 197 F.3d 271, 281 (7th Cir. 1999). In the predisposition analysis, a defendant's reluctance to commit the crime "looms large." *Mayfield,* 771 F.3d at 437.

Unlike Mayfield's counsel, Ward's trial counsel made no proffer in response to the Government's Motion *in limine* to preclude Defendants from raising an entrapment defense. The Court must therefore determine whether counsel's failure to do so fell below professional norms and resulted in prejudice. As the Seventh Circuit has emphasized, a defendant's initial burden in defeating such a motion is not great: "the defendant must produce some evidence from which a reasonable jury could find government inducement and lack of predisposition." *Id.* at 443.

Ward has not shown that his counsel lacked "sound reason" in choosing not to present an entrapment defense. Indeed, most of

the factors the Court uses to assess predisposition appear to weigh against this strategy. First, the Government did not initially approach Ward about the scheme — Mayfield did. Second, Ward participated in the scheme for profit. As Gomez indicated, the 25 to 35 kilograms of cocaine stored in the stash house would be split five ways, and that everybody involved was "going to eat." Third, Ward did not display reluctance to commit the robbery. He asked Gomez questions about the logistics of the scheme, suggested that Gomez send a signal from within the stash house, and proposed that the cocaine be split five ways. He indicated that the robbery was not too much for him to handle, and stated that he had not come "all the way from Milwaukee for nothing." Fourth, as to the nature of the Government's inducement, there is nothing extraordinary about an invitation to enter the drug trade on the "usual terms" — that is, to quickly acquire a large quantity of drugs and resell them for a significant profit. *Hall,* 608 F.3d at 344. Together, these factors suggest that counsel's decision not to pursue an entrapment defense represented a legitimate trial strategy. As to the defendant's character or reputation, the Government notes that Ward has prior convictions for armed violence and battery. This last factor carries little weight, however, because these convictions took place in the late 1980s. *See, Mayfield,* 771 F.3d at 428.

Ward claims that the Seventh Circuit's *en banc* decision in *Mayfield* "shows a high probability Ward would have enjoyed the relief of a new trial with allowance of an entrapment defense." (Ward Reply, ECF No. 11, at 4.) However, the facts of Ward's case are distinguishable from Mayfield's. The Seventh Circuit found that Mayfield's proffer contained sufficient evidence of both inducement and predisposition. As to inducement, the court observed that Potts, the CI who initially recruited Mayfield,

> targeted Mayfield at a moment of acute financial need and against a backdrop of prolonged difficulty finding permanent, family-supporting work, . . . appealed to Mayfield's friendship and camaraderie and to their common struggle as convicted felons trying to make a living, . . . gave Mayfield money in order to create a debt that he knew Mayfield would be unable to repay and then exploited that debt by alluding to his status as a member of the Gangster Disciples, . . . [and] pestered Mayfield over a substantial period of time.

*United States v. Mayfield*, 771 F.3d 417, 441 (7th Cir. 2014). As to predisposition, the court noted that Mayfield repeatedly rejected Potts' entreaties, relenting only when Potts implied that the Gangster Disciples might retaliate against him if he failed to repay his debt. *Id.* at 442. Ward has not indicated what evidence, if any, could support the requisite inducement or lack of predisposition necessary to support an entrapment defense. Without this information, the Court cannot conclude that counsel's failure respond to the Government's Motion *in limine* fell below professional norms. Nor can the Court conclude that it resulted in prejudice. As the Government notes, counsel's decision not to

present an entrapment defense prevented the Government from exploring Ward's previous criminal conduct. The Court thus rejects this basis for Ward's ineffective assistance of counsel claim as well.

The Court now turns to Ward's argument that his counsel was ineffective in failing to challenge ATF sting operations on the basis that they are racially biased or otherwise unconstitutional. In support of this argument, Ward submits excerpts a Northern District of California case, *United States v. Dunlap,* and several newspaper articles from 2013 and 2014 questioning the validity of sting operations. The *Dunlap* decision, however, was reversed prior to the filing of Ward's supplemental memorandum. Although the Ninth Circuit noted that it questioned the expanding use of fake stash house sting operations, it was nonetheless "bound by our court's prior decisions holding that when such sting operations are conducted, as in this case, within the guidelines established by our precedent, they do not violate due process and cross the line into outrageous government conduct." *United States v. Dunlap,* 593 F. App'x 619, 621 (9th Cir. 2014).

Ward asks, had the issue of racial bias been pursued through discovery and raised at trial, "is it not reasonable to assume the government would have sought dismissal of the case against him . . .?" (Ward Supplemental Mem., ECF No. 12, at 2.) Ward relies on a case in which the Government asked the district court

- 11 -

to dismiss a criminal indictment without prejudice, in an attempt to facilitate an immediate appeal, after defendants had requested discovery regarding the use of fake stash houses. *See, United States v. Davis,* 766 F.3d 722, 734 (7th Cir. 2014). However, Ward's speculation is insufficient to establish prejudice — that is, the "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 687–88; *see also, United States v. Asubonteng,* 895 F.2d 424, 429 (7th Cir. 1990) (explaining that conclusory allegations do not satisfy Strickland's prejudice component). Because Ward has not shown that his attorney's conduct fell below professional norms, or resulted in prejudice, this basis for Ward's ineffective assistance of counsel claim also fails.

### B.  Sufficiency of Evidence

Ward next argues that the evidence presented at trial was insufficient to sustain his conspiracy conviction. Ward does not elaborate on this claim, but states briefly that "there was no evidence directly or by testimony that Ward entered an agreement to distribute the fictitious drugs." (Ward Mem., ECF No. 3, at 14.) The Seventh Circuit has already determined that the Government presented sufficient evidence of a conspiracy to steal the cocaine as well as the intent to distribute it. *Kindle,* 698 F.3d at 406–07. The court concluded that a jury could reasonably

infer intent to distribute based on several facts — namely, (1) the large quantity of drugs Defendants sought to recover, and (2) "the huge risk the defendants planned on exposing themselves to" in robbing a stash house flanked by armed guards. *Id.* at 407. Given the huge risk involved, defendants "must have expected an equally huge reward," which would have required distribution. *Id.*

"Issues that were raised and resolved on direct appeal may not be reconsidered on a § 2255 motion unless the law has changed or new facts have come to light." *United States v. Hamilton,* No. 09 C 654, 2010 WL 1656850, at *2 (N.D. Ill. Apr. 21, 2010). Because the sufficiency of the evidence to support the conspiracy conviction has already been raised resolved on Ward's direct appeal, and Ward has presented no reason to disturb the Seventh Circuit's ruling, the Court must reject Ward's insufficient evidence claim.

### C. Other Claims for Relief

Ward's remaining claims for relief — that he was charged with a non-existent offense and that the Court lacks subject matter and personal jurisdiction — are procedurally barred because they were not raised on Ward's direct appeal. *See, Wright,* 139 F.3d at 553. Ward makes no attempt to explain why these additional claims for relief appear for the first time in his § 2255 petition.

Even if they were not procedurally barred, the Court would find Ward's remaining claims to be without merit. The Court has

already rejected Ward's argument that he was charged with a non-existent offense. Ward's argument that the Court lacks personal and subject matter jurisdiction is similarly rooted in the "fictitious" nature of the charges, and can be rejected for the same reasons. Moreover, it is well established that the Court has personal jurisdiction "over any defendant brought before it on a federal indictment charging a violation of federal law," *United States v. Phillips,* 326 F. App'x 400 (7th Cir. 2009), and subject matter jurisdiction over criminal prosecutions pursuant to 18 U.S.C. § 3231, *United States v. Burke,* 425 F.3d 400, 408 (7th Cir. 2005). The Court therefore rejects Ward's remaining claims for § 2255 relief.

## IV. CONCLUSION

Having found no grounds upon which to grant Ward relief under § 2255, the Court denies his Motion to Vacate, Set Aside, or Correct his Sentence [ECF No. 1].

**IT IS SO ORDERED.**

						_____
						Harry D. Leinenweber, Judge
						United States District Court

Dated: 5/29/2015